UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEVIN R. RUSSELL,

        Plaintiff,

       v.

VERIZON COMMUNICATIONS INC.,

        Defendant.

REPORT & RECOMMENDATION

01-CV-0752A

---

**PRELIMINARY STATEMENT**

By Order of Hon. Richard J. Arcara, Chief Judge, dated November 14, 2006, all dispositive motions in the above-captioned case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C). (Docket # 40).

Plaintiff Kevin R. Russell initiated this lawsuit on October 24, 2001, against his former employer Verizon Communications Inc. ("Verizon"). (Docket # 1). According to his *pro se* complaint,[1] Russell alleges that Verizon unlawfully terminated his employment following a medically-justified absence from work, in violation of the Family and Medical Leave Act of 1993 (the "FMLA"). (Docket # 1). On May 24, 2004, Verizon filed a motion for summary judgment, arguing, *inter alia*, that Russell cannot make out a *prima facie* case of discrimination under the FMLA. (Docket # 27).

---

[1] Following the filing of his complaint, Russell retained an attorney who represented him for eight months. His attorney thereafter moved to withdraw, and the Court granted the motion. (Docket # 22). Since that time, Russell has represented himself.

1

Pursuant to Rule 56.2 of the Local Rules of Civil Procedure for the Western District of New York (the "Local Rules"), Russell was served with a notice advising him that his claim could be dismissed if he failed to respond to the motion, and a scheduling order was issued setting a deadline for Russell to respond. Despite being granted two extensions of the deadline, Russell did not submit opposing papers. (Docket ## 36, 37). Russell also failed to appear for oral argument. (Docket # 38).

In support of its motion for summary judgment, Verizon has submitted a Statement of Undisputed Material Facts as required by Local Rule 56.1(a). (Docket # 28). Where, as here, the nonmoving party fails to submit a statement of undisputed facts or otherwise controvert the moving party's asserted facts, those facts are generally deemed admitted. *See* Local Rule 56.1(c) (all uncontroverted material facts set forth in the moving party's statement shall be deemed admitted); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party [] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted"). Of course, "the local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law." *Id*. (internal quotation omitted).

**FACTUAL BACKGROUND**

Verizon is a provider of wireline and wireless communications and publisher of print and online directory information. (Docket # 28 at ¶ 3). To promote consistent attendance by its employees, Verizon implemented an attendance policy, known as the Absence Control Plan, which prescribes progressive disciplinary procedures applicable to attendance violations.

(*Id.* at ¶ 4). The plan provides a six-step procedure that culminates in an employee's "separation" from employment. Under the plan, an employee generally progresses in one-step intervals for each non-FMLA approved absence that occurs within three to six months following a previous violation. (*Id.* at ¶ 7). For example, if an employee is placed on Step 1 due to an unexcused absence and is absent again less than three months later, that employee would progress to Step 2.

In 1989, Russell was hired by Verizon as an Installation Repair Technician.[2] (*Id.* at ¶¶ 8-9). After holding various other positions at the company, Russell accepted a position as a Customer Service and Sales Representative in late 1995 or early 1996. In that capacity, his responsibilities included addressing customer service issues related to Verizon's telephone business. (*Id.* at ¶¶ 10-13). He was terminated on October 25, 1999. (*Id.* at ¶¶ 37-43).

In the months prior to Russell's termination, Verizon managers met with him on several occasions to discuss his attendance problems. Specifically, in May 1999, managers Debra A. Ziewicki and Steven C. Bunce met with him to discuss his absence during the period April 19 to May 14, 1999. (Affidavit of Debra A. Ziewicki, sworn to on May 18, 2004 ("Ziewicki Aff."), ¶¶ 7-8). Ziewicki advised Russell that his absence was not approved under the FMLA and that he was being placed on "Step 5, Final Warning," for one year. (*Id.* at ¶ 8). During the meeting, Ziewicki also reviewed with Russell his overall attendance record as a customer service representative. (*Id*. at ¶ 9). Russell was warned that "unless [his] attendance [became] satisfactory to the company and remain[ed] satisfactory, [he would] be separated from

---

[2] At that time, Russell was hired by New York Telephone, which later became NYNEX, which became Bell Atlantic, which became and still is Verizon. (Docket # 28 at n.1). For ease of reference, this Court will refer to all prior entities as "Verizon."

the payroll." (*Id*. at ¶ 10; Affidavit of Steven C. Bunce, sworn to on May 20, 2004 ("Bunce Aff."), ¶ 11). According to both managers, Russell indicated that he understood the action taken against him. (Ziewicki Aff. at ¶ 11; Bunce Aff. at ¶ 12).

Ziewicki again met with Russell on June 22, 1999 to discuss a non-FMLA approved absence that had occurred the previous day. As before, Ziewicki reviewed Russell's absences with him, and Russell was informed that he was repeating Step 5, Final Warning. (Ziewicki Aff. at ¶¶ 10, 12-14). Russell was further advised that his next non-FMLA approved absence would result in his dismissal, and he again indicated that he understood. (*Id.* at ¶¶ 15-16).

On October 18, 1999, Russell called in sick to work. The following day, Russell again called in sick, stating that he had an "infection" and would return on October 21, 1999. (*Id.* at ¶¶ 17-18). After receiving Russell's telephone call, Bunce requested a calculation of the number of hours Russell had worked during the previous twelve months and was advised that Russell had worked 1,239.35 hours during that period. (Bunce Aff. at ¶¶ 15-16). Based upon that information and Russell's Step 5 placement, Bunce, in consultation with Director Bette J. Smith, decided to terminate Russell. (Bunce Aff. at ¶ 16).

When Russell returned to work on October 25, 1999, Bunce and Ziewicki met with him and advised him that his absence had not been approved because he had not worked the minimum number of hours – 1,250 – to be eligible to take FMLA leave. (Bunce Aff. at ¶¶ 18-20; Ziewicki Aff. at ¶ 21). Bunce told Russell that he was being terminated because his absence did not qualify under the FMLA and because he was already on Step 5 of the Absence Control Plan.

4

(Bunce Aff. at ¶ 22; Ziewicki Aff. at ¶ 23). Russell did not challenge the calculation of the number of hours he had worked. (Bunce Aff. at ¶ 23).

## DISCUSSION

Russell's complaint contains a single claim alleging that he was terminated following a medically-justified absence from work in violation of the FMLA. (Docket # 1). Discovery was conducted, and Verizon now seeks summary judgment on the grounds that Russell cannot state a claim under the FMLA because (1) he cannot establish that he worked the required minimum number of hours to be eligible for FMLA leave, and (2) he cannot demonstrate that his final absence qualified as protected leave under the FMLA. (Docket # 33). For the reasons explained below, I recommend that defendant's motion be granted.

### I. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reaching this determination, the court must assess whether there exist any disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.

1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the nonmoving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d at 982 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60 F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

As the Second Circuit has explained:

> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II. Analysis

Russell's complaint alleges that he was terminated from his employment at Verizon in retaliation for having exercised his rights under the FMLA to take leave due to his medical condition. (Docket # 1). The purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. §§ 2601(b)(1) and (2). *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998). To effectuate these purposes, the Act provides:

> [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
>
> (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.
>
> (B) Because of the placement of a son or daughter with the employee for adoption or foster care.
>
> (C) In order to care for the spouse, or a son, daughter, or parent of the employee, if such spouse, son, daughter, or parent has a serious heath condition.
>
> (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612.

To ensure that an employee is not discriminated against for exercising his or her rights under the FMLA, the Act further provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. §§ 2615(a)(1). Applicable regulations "explain that

'[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave,' and that '[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave.'" *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (quoting 29 C.F.R. § 825.220(b)-(c)). *See also Hodgens v. General Dynamics Corp.*, 144 F.3d at 160 n.4 ("the Act was clearly intended to provide . . . protection [from retaliation] . . . [and] [s]uch protection can be read into § 2615(a)(1)").

    Russell's claim is that Verizon violated the FMLA by unlawfully terminating his employment in retaliation for having taken FMLA leave. This retaliation claim is subject to analysis under the framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Potenza v. City of New York*, 365 F.3d at 168; *Coleman v. Prudential Relocation*, 975 F. Supp. 234, 238 (W.D.N.Y. 1997). Under this approach, the plaintiff bears the initial burden of establishing a case of discrimination or retaliation. If the plaintiff is able to satisfy this initial burden, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action. Once a lawful, nondiscriminatory explanation is articulated, the burden shifts back to the plaintiff to prove that the defendant's proffered reason is merely a pretext for discrimination or retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993). Although the *McDonnell Douglas* framework shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff at all times remains with the plaintiff." *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. at 253; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507.

To satisfy his initial burden of making out a *prima facie* case of retaliation under the FMLA, Russell must establish that: "(1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168. *See Coleman v. Prudential Relocation*, 975 F. Supp. at 238 ("To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that he engaged in activity protected by the FMLA, that he was subjected to an adverse employment action, and that there is a causal connection between the protected activity and the adverse action"). Verizon maintains that Russell cannot demonstrate the first element of his *prima facie* case. I agree.

### A. Eligibility Under the FMLA

In order to exercise FMLA-protected rights, the employee must first establish that he or she is an "eligible employee" under the FMLA. 29 U.S.C. § 2612. *Id.* at 235; *Spurlock v. NYNEX*, 949 F. Supp. 1022, 1033 (W.D.N.Y. 1996). The Act defines "eligible employee" as "an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2). There is no dispute that Russell had been employed for at least twelve months prior to the challenged leave. As to the second element, however, Verizon maintains that Russell cannot satisfy the minimum number of hours to be considered an eligible employee.

Verizon has submitted evidence in the form of affidavits and employment records showing that Russell had worked only 1,239.35 hours during the twelve-month period

9

immediately preceding the first day of his challenged leave. (Docket # 30 and Exs. 2 and 3). Russell has not controverted Verizon's calculation or the assertion that he had not accumulated the required 1,250 hours to be considered an eligible employee under the FMLA. As previously noted, Russell has not submitted any papers opposing the pending motion. In addition, a careful review of the record satisfies this Court that Verizon employed the proper methodology to calculate Russell's hours of service. Bunce's affidavit explains that the period utilized was the twelve-month period preceding the first day of the challenged leave, October 18, 1999. (Docket # 30, ¶ 15 and Ex. 2). Utilization of a rolling twelve-month period preceding the date of the leave is a permissible method of determining the statutorily-specified "12-month period." 29 C.F.R. § 825.200(b)(4). *See Vlahos v. Schroeffel*, 2006 WL 544444 (E.D.N.Y. 2006). *See also Butler v. Owens-Brockway Plastics Prods., Inc.*, 199 F.3d 314, 316 (6th Cir. 1999) (the twelve-month period must be measured backward from the date of the beginning of the leave, not from the date of the adverse action). During that period, hours actually worked by Russell, rather than those used by him for vacation, holiday, illness or other leave, were counted. Again, that is the proper methodology. *See*, *e.g.*, *Plumley v. Southern Container, Inc.*, 303 F.3d 364, 372 (1st Cir. 2002) ("we hold that hours of service, as those words are used in the FMLA, include only those hours actually worked in the service and at the gain of the employer"); *Robbins v. Bureau of Nat'l Affairs*, 896 F. Supp. 18, 21 (D. D.C. 1995) ("an employee only gets credit toward the FMLA 'hours of service' requirement if the employee actually worked the hours in question").

Although the hours that Russell actually worked (1,239.35) approach the required minimum, they are nonetheless shy of the statutory requirement of 1,250, and I perceive no material facts in dispute as to their calculation. Accordingly, because Russell cannot establish

that he was an employee who was eligible to exercise rights under FMLA, Verizon should be granted summary judgment and Russell's complaint should be dismissed. *Plumley v. Southern Container, Inc.*, 303 F.3d at 372 (affirming summary judgment for employer where plaintiff did not work the required minimum number of hours); *Robbins v. Bureau of Nat'l Affairs*, 896 F. Supp. at 21 (granting summary to defendant because plaintiff did not work the required minimum number of hours in the preceding twelve-month period). *See also Spurlock v. NYNEX*, 949 F. Supp. at 1033 (granting defendant's motion to dismiss plaintiff's FMLA claim where plaintiff's complaint "merely asserts in a conclusory manner without stating any facts" to show he had worked at least 1,250 hours in the preceding twelve months").

    **B. <u>Serious Health Condition Under the FMLA</u>**

On the record before this Court, summary judgment is also warranted on the grounds that no material facts exist to dispute Verizon's assertion that Russell's absence was not due to a serious health condition. (*See* Docket # 33 at 8-9). To prove an FMLA retaliation claim, plaintiff must establish that he suffered an adverse employment action in retaliation for exercising rights protected under the FMLA. *Potenza*, 365 F.3d at 168. Among the rights prescribed by the FMLA is the right of an eligible employee to take leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Verizon maintains that Russell's illness, which he merely describes in his complaint as "medically justified" (Docket # 1), does not meet this standard. I agree.

Applicable regulations define "serious health condition" under the FMLA as an illness or physical or mental condition that involves "impatient care" or "continuing treatment by

a health care provider." 29 C.F.R. § 825.114(a). In his complaint, Russell neither describes his illness, nor identifies whether it resulted either in the need for inpatient care or continuing medical treatment. Indeed, according to Ziewicki's affidavit, Russell simply stated at the time that he was sick with an undisclosed infection. (Docket # 32 at ¶¶ 17-18). Based on this record, I find that Russell has alleged no facts to raise a triable issue of fact that his absence was due to a serious health condition entitling him – even if he were eligible – to take leave under the FMLA. Accordingly, summary judgment in Verizon's favor is appropriate on this basis as well.[3] *See, e.g.*, *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 500-501 (7th Cir. 1999) (affirming grant of summary judgment to defendant where plaintiff failed to adduce any evidence, other than self-serving assertions, to establish that he suffered from a serious health condition as defined by the FMLA); *Spurlock*, 949 F. Supp. at 1033 (granting defendant's motion to dismiss where plaintiff has alleged no facts to identify the nature of his illness and thus has "fail[ed] to show how and why he was entitled to leave under the FMLA").

---

[3] Because I find that Verizon is entitled to summary judgment on this basis, as well as because he is not an eligible employee under the FMLA, I decline to address Verizon's third, alternative contention that it discharged plaintiff for a legitimate, non-pretextual reason. (*See* Docket # 33 at 3).

## **CONCLUSION**

For the foregoing reasons, it is the recommendation of this Court that Verizon's motion for summary judgment **(Docket # 27)** be **GRANTED**.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
January  30 , 2007

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
         January   30  , 2007